THE DAVENPORT NATIONAL BANK, Respondent, *v.* HENRY A. HOMEYER *et al.*, Appellants.

1. *Contract — Bill of lading, negotiability of.* — In a qualified and restricted sense, a bill of lading has the attribute of negotiability, and may be transferred by indorsement and delivery.

2. *Contract — Bill of lading — Delivery without indorsement.* — The delivery of a bill of lading without indorsement, for value, transfers the property in the goods which it covers.

10—VOL. XLV.

3. *Contract—Bill of lading attached to draft—Delivery without indorsement.* A. consigned to B., as his factor, 300 barrels of flour, and drew on him for the amount due. The draft was discounted by a bank on the faith of the bill of lading issued on the flour. The bill was attached to the draft as collateral security, and thus transferred to the bank, but was not indorsed or formally assigned, B. having refused to accept the draft. *Held,* that he was not at liberty to appropriate the flour or its proceeds to his own use. It was the property of the bank, for the purpose of meeting the dishonored draft.

*Appeal from St. Louis Circuit Court.*

*Krum, Decker & Krum,* for appellants.

The mere delivery of the receipts gave the respondent no title to the property covered by them, and no claim upon the fund realized from its sale, there being no indorsement or appropriate written words of assignment. (Conant v. Atlantic Ins. Co., 1 Pet. 386, 445; Merch. & Mech. Bank of Chicago v. Hewitt, 3 Iowa, 93, 103; Law v. Hatcher, 4 Blackf. 364–6; Conrad v. Atlantic Ins. Co., approved in Gibson v. Stevens, 8 How., U. S., 384, 399; Salters v. Everett, 20 Wend. 267, 280; Winslow v. Norton, 29 Me. 419; Newsom v. Thornton, 6 East, 17, 41; Stone v. Swift, 4 Pick. 389.)

*E. W. Pattison,* for respondent.

Respondent acquired title to the flour to the extent of its advances. The assignment of a bill of lading transfers the property in the goods mentioned therein. (1 Pars. on Cont. 239; 1 Pars. on Maritime Law, 138 *et seq.;* Abb. on Shipping, 333; Lickbarrow v. Mason, 1 Smith's Lead. Cas. 588; Coxe v. Harden, 4 East, 217; Lawes on Charter Parties, 324, 326; Caldwell v. Ball, 1 T. R. 216.) Such assignment by the shipper passes the legal title to the property against the shipper's agents, factors, or creditors. (Conrad v. Atlantic Ins. Co., 1 Pet. 387, 445; Nathan v. Giles, 5 Taunt. 558; Nichols v. Clent, 3 Price, 547; Haille v. Smith, 1 Bos. & Pul. 563; Kinloch v. Craig, 3 T. R. 119; Bruce v. Wait, 3 Mees & W. 15; Archer v. McMeechan, 21 Mo. 45.) And this, too, though the consignor be indebted to the factor for advances on previous consignments. (Story on Agency, §§ 376–7; Bank of Rochester v. Jones, 4 Comst., N.

Y., 497; 2 Kent's Com. 640, note 1; Allen v. Williams, 12 Pick. 297; Walter v. Ross, 2 Washb. C. C. Rep. 283; Dows v. Greene, 32 Barb. 490; Grove v. O'Brien, 8 How. 429; Lowery v. Steward, 25 N. Y. 239.) The bill of lading is often spoken of as a negotiable instrument. It is, however, only *quasi* negotiable. The assignment of a bill of exchange transfers the contract; the assignment of a bill of lading transfers the property. (Thompson v. Downing, 14 Mees & W. 40; Rowley v. Bigelow, 12 Pick. 315; Haille v. Smith, 1 Bos. & Pul. 569.) Any act on the part of the consignor which indicates his intention to transfer the property is sufficient; and if done *bona fide*, for a valuable consideration, is good against the world, whether done by manual delivery of that which is the symbol of the property, or by a written instrument. (8 How., U. S., 399, 400.) And the assignee has, if nothing more, at least an equitable lien on the shipment. (Kimball v. Donald, 20 Mo. 579; Bryan v. Nix, 4 M. & W. 789–90.) And the power of the consignor over the bill of lading for this purpose is not changed by the fact that a consignee is named in it, so long as it is in the hands of the consignor. (Valle v. Cerre's Adm'r, 36 Mo. 586–7; Allen v. Williams, 12 Pick. 297; Mitchell v. Ede, 11 Ad. & E. 903; Conrad v. Atlantic Ins. Co., 1 Pet. 445; Abb. on Shipping, 326, note, 338; Grove v. O'Brien, 8 How. 439; Barrow v. Coles, 3 Campb. 92.) It follows from the above that it was not requisite that the railroad receipts should have been indorsed by the consignors. (Cases above cited, especially 8 How., U. S., 400.) Even a promissory note may be assigned without indorsement. (Boeka v. Muella, 28 Mo. 180; 3 Mon. & Ayrf. 219; 2 Jac. & Walker, 243.)

Currier, Judge, delivered the opinion of the court.

In February, 1867, S. M. & D. A. Burrows, of Davenport, Iowa, consigned to the defendants, as their factors or commission merchants, 300 barrels of flour. The flour was shipped by railroad in two parcels, and the usual bills of lading issued therefor by the carrier. The consignors at the same time drew on the consignees, against the flour, three drafts of $900 each.

These drafts were discounted by the plaintiffs upon the faith of the bills of lading, which were deposited with them as collateral security. The bills of lading were not indorsed or formally assigned in writing. They were attached to the drafts, and thus transferred to the bank. The consignors were at the time in arrear to the consignees for advances made on account of prior shipments. The advances had been made with an expectation, on the part of the consignees, of a continued business.

Upon this state of facts the question arises whether, for the purposes of the discount, the mere manual delivery of the bills of lading vested in the plaintiff such title to the flour that they can hold it or its proceeds as against the defendants.

In a qualified and restricted sense, a bill of lading has the attribute of negotiability. Various authorities cited by the defendants' counsel show that this is so, and that such contracts may be transferred by indorsement and delivery. This is undoubtedly the accepted doctrine on that subject. It does not thence follow, however, that a transfer by manual delivery merely would be nugatory or ineffectual as against the consignor's factor to whom the goods described in the bill of lading may have been shipped, as in the present case. But this is the defendants' point. It is plausible, but not sound. Nor is it sustained by the authorities cited in its support. Law v. Hatcher, 4 Blackf. 364, goes no further than to affirm the proposition that the title to goods conveyed by a bill of lading would pass from the consignor to a purchaser by an indorsement and delivery of the bill of lading to the vendee. This is but the common doctrine affirmed by all the cases. The question whether a mere manual delivery of the bill, without a written indorsement, would not have had the same effect is a point not noticed in the case. Nor is it raised in the other cases to which the defendants' counsel refers us. Storm v. Swift, 4 Pick. 389, was a suit for malicious prosecution. It was there decided that the holder of an unindorsed bill of lading could not sue upon it in his own name. In Buffington v. Curtis, 15 Mass. 497, it was held that an indorsement of the bill of lading without a delivery of it did not transfer the title to the goods. In Allen v. Williams, 12 Pick. 297 it was held

that where the bill of lading was filled up with the name of a particular consignee or bearer, the mere delivery of the bill by the shipper for value passed the property, as against the named consignee. And the court say that whether the transferee acquired, by delivery of the bill of lading, an absolute property in the goods, or a lien only, was immaterial.

But it is urged that, although it be true that the delivery of a bill of lading without indorsement conveys the title to the goods it covers, when by the terms of the bill the goods are deliverable to " bearer," still it would be otherwise when, as in this case, the bill contained no word or provision of equivalent force or meaning. This distinction is not shown to be recognized by any adjudicated case.

The adjudication in the Bank of Rochester v. Jones, 4 Comst. 497, sustains fully the proposition that the delivery of a bill of lading for value, although unindorsed, and containing no provision for the delivery of the goods to bearer, carries with it the property in the goods covered by the bill, as against the consignor's factor; and this, although the consignor was indebted to his factor for advances made on account of prior shipments. That case and the case at bar are quite identical in all their material facts and circumstances.

The bill of lading represents the property therein described, and a delivery of the bill is treated as a symbolical delivery of the property. A written indorsement may be necessary to transfer the contract so as to enable the transferee to sue on it in his own name, as in Buffington v. Curtis; but the delivery of the bill of lading without indorsement, for value, transfers the property in the goods. In the Bank of Rochester v. Jones, the court say: " The true ground on which to sustain this transfer of property is by regarding the transaction as a sale to the bank in trust, to deliver the property to the consignee in case he accepted the drafts; and if he refused to accept, then to sell the flour, and to retain out of the proceeds the amount of the drafts, and to pay the surplus to the consignor."

In the case at bar, the shippers were the owners of the flour, and had absolute control over it. They consigned it to the

defendants, and drew upon them against the shipments, delivering over to the plaintiff the bills of lading as collateral to the drafts which the plaintiff discounted. The defendants having refused to accept, they were not at liberty to appropriate the flour or the proceeds of it to their own use. It was the property of the plaintiff for the purpose of meeting the dishonored drafts.

This substantially disposes of the case. It discloses no facts of a character to defeat the rights of the plaintiff, acquired in virtue of their negotiation and arrangement with the shippers of the flour. The evidence shows that the defendants anticipated further shipments, but there is no evidence of any concluded arrangement between them and the Burrows to that effect, or that the defendants ever made any advances on the flour in question. Nor are the defendants helped in their resistance of the plaintiff's claim by the circumstance that one of the Burrows was a *femme covert*.

In my opinion, the judgment ought to be affirmed. The other judges concur.