SKILLING v. BOLLMAN *et al., Appellants.*

**Bill of Lading**: DELIVERY PASSES TITLE TO GOODS. A bill of lading is the representative of the goods for which it is given, and its delivery will pass title to them as effectually as an actual sale and delivery of them. Nor will the fact that it is indorsed to a third party prevent the delivery having this effect, where the bill accompanies a draft drawn upon such third party. Nor in a contest with a subsequent purchaser of the goods for value and without notice, claiming them by indorsement of a duplicate bill of lading and actual delivery of the goods, is it material that the bill first delivered was given in part payment of or as collateral security for a pre-existing debt, and not for a present advance of money.

*Appeal from St. Louis Court of Appeals.*

AFFIRMED.

*Noble & Orrick* for appellants.

The title to the highwines did not pass to plaintiffs by the delivery of the bill of lading. The bill was indorsed to Gregory & Stagg, not to plaintiffs; and plaintiffs paid no money to the company as proceeds for the drafts, but simply took them for collection. This is shown by the

fact that when the drafts were returned unpaid, plaintiffs charged the amount of the drafts back to the company. Plaintiffs could only have gotten title by paying value. *Davenport Bank v. Homeyer*, 45 Mo. 145; *Newson v. Thornton*, 6 East 17; 1 Parsons on Shipping, 194. The failure of Gregory & Stagg to accept the drafts, remitted the title to the bill of lading to the company, and not to the bank. When the draft is not accepted, but the bill of lading is retained, the bill of lading acquired in that manner gives no right of property to the person so acquiring it. *In re Yglesias*, L. R., 10 Chan. App. Cas. 639. Bills of lading by the laws of Illinois not being negotiable, the bank took the bill indorsed by the distilling company to Gregory & Stagg, subject to all equities in favor of appellants, as owners, under the other bill of lading, the carrier having the right to deliver the highwines upon either of the two bills; no title passed to the bank through the receipt of one, the delivery of the property under the other having been made to appellants, who are innocent purchasers for value, and paying a present consideration.

*Finkelnburg & Rassieur* and *Garland Pollard* for respondents.

The delivery to the respondents of the bill of lading with the drafts drawn against the proceeds of the shipment attached as security for the payment of the drafts, transferred the title to the highwines to respondents as completely and effectually as though there had been an actual delivery of the highwines themselves, subject to the acceptance of the drafts by Gregory & Stagg. *Mich. Cent. R. R. Co. v. Phillips*, 60 Ill. 190; *West. U. R. R. Co. v. Wagner*, 65 Ill. 197; *Broadwell v. Howard*, 77 Ill. 305; *Peters v. Elliott*, 78 Ill. 321; *O. & M. Ry. Co. v. Kerr*, 49 Ill. 458; *Bank v. Homeyer*, 45 Mo. 145; *Nat. Bank v. Dearborn*, 115 Mass. 219; *s. c.*, 15 Am. Rep. 92; *Nat. Bank v. Bayley*, 115 Mass. 228; *Newcomb v. B. & P. R. R. Co.*, 115 Mass. 230;

*First Nat. Bank v. Crocker*, 111 Mass. 163; 3 Parsons on Contracts, p. 487. It is not necessary that the bill of lading be indorsed on delivery, or that the name of the transferee in any manner appear upon it; a simple, manual delivery of the bill, unindorsed, with the intention of thereby transferring the property therein mentioned, either absolutely or as a pledge to secure a draft, passes the title to the property to the transferee of the bill. 45 Mo. 145; 78 Ill. 321. An antecedent debt is a sufficient consideration for the delivery of a draft and bill of lading to secure the same. 78 Ill. 321. The person who first gets the bill of lading (though only one of a set of three) gets the property which it represents; he need not do any act to assert his title which the transfer of the bill of lading itself renders complete, and any subsequent dealings with the others of the set are subordinate to the rights passed by that one. *Barber v. Meyerstein*, L. R., 4 H. L. Cas., Eng. & Ir. App. 317; *Caldwell v. Ball*, 1 T. R. 205; *Valle v. Cerre*, 36 Mo. 587; 3 Kent Com., (12 Ed.) 208.

HENRY, J.—This suit was instituted in the circuit court of St. Louis county by plaintiffs, to recover of defendants the value of 150 barrels of highwines, and the following are the facts on which the controversy arose: Skilling, Carter & Ahrenz were bankers at Beardstown, Illinois, and the Beardstown Distillery Company was a corporation doing business at the same place. In 1874, and subsequent years, said bankers had loaned large sums of money to the distilling company, amounting in February, 1876, to about $20,000. On the 25th of that month, the distilling company shipped to St. Louis, by steamboat, 200 barrels of highwines, and triplicate bills of lading were executed by the boat to the order of the distilling company, of which two were delivered to Blumb, its secretary, one of which he placed and locked in his desk, but Sheber, the vice-president and general manager of the company, also had a key to the desk, and furtively took the bill of lading,

and, under the false pretense of going elsewhere, took passage on the boat and accompanied the highwines to St. Louis, where he sold and delivered 150 barrels to the defendants. The boat arrived at St. Louis on the 26th of February, and between nine and ten o'clock a. m. of that day, Sheber sold and delivered 100 barrels, and subsequently fifty barrels to the defendants. On the same day, and about the same hour, Blumb indorsed the bill of lading in his possession, ordering the delivery of the wines to Gregory & Stagg, of St. Louis, and drew two drafts on them, against the wines, for $7,000 each, payable to plaintiffs, to whom, at the same time, the bill of lading and drafts were delivered. Gregory & Stagg refused to accept the drafts, and plaintiffs, who, on receiving them, had credited the amount on the distilling company's account, re-charged it against said company.

The evidence proved that Sheber was vice-president and general manager of the business of the distilling company, and as such, authorized to sell the wines; and that, by the by-laws of the corporation, Blumb had no authority to draw checks, or notes, or drafts, or indorse bills of lading, for the corporation, but there was evidence that he did so, in all transactions with the plaintiffs, with the knowledge and acquiescence of the corporation, and the question of his authority to draw the drafts, and to indorse and dispose of the bill of lading in question, was properly submitted to the jury.

That the bill of lading was delivered to the plaintiffs as collateral security for a pre-existing indebtedness cannot be controverted, and we are of opinion that the controlling question for determination by the jury, on the evidence as preserved in the bill of exceptions, is, whether the delivery of the bill of lading to plaintiffs, or the sale to defendants, was prior in point of time. "Bills of lading, by the law merchant, are representatives of the property for which they have been given, and the indorsement and delivery of a bill of lading transfers the property from the

vendor to the vendee; is a complete legal delivery of the goods; divests the vendor's lien." Benjamin on Sales, § 813. In *Meyerstein v. Barber*, L. R., 2 C. P. 42, Erle, C. J., said: "While the goods are afloat, it is common knowledge, and I should not think of citing authorities to prove it, that the bill of lading represents them, and the indorsement and delivery of the bill of lading, while the ship is at sea, operate exactly the same as the delivery of the goods themselves to the assignee after the ship's arrival would do." In *M. C. R. R. Co. v. Phillips*, 60 Ill. 198, the court said: "The bill of lading was the documentary evidence of the shipper's property in the hands of the carrier; it represented the property, and the delivery of the bill of lading to the bank was a symbolical delivery of the high wines, so as to vest the property in the bank. It was as effective in transferring the possession, as the delivery of the keys of a warehouse is of the goods contained in it, or a storekeeper's receipt of the goods described in it, or a warehouseman's receipt of the property it embraces." To the same effect are *Burton v. Curyea*, 40 Ill. 320, and *W. U. R. R. Co. v. Wagner*, 65 Ill. 198; and numerous other authorities might be cited in support of the proposition, but we forbear incumbering this opinion with references to sustain a doctrine nowhere controverted.

If, therefore, the delivery of the bill of lading to plaintiffs occurred before the sale to the defendants, it makes no difference, that it was for a pre-existing debt, or whether it was an absolute sale of the goods, or intended as a collateral security for the debt. On the other hand, if the defendants' purchase was prior to the delivery of the bill of lading to the plaintiffs, their title is superior to that of the plaintiffs. "When several bills of lading have been signed, the person who first gets one of them by a legal title from the owner, or shipper, has a right to the consignment." *Caldwell v. Ball*, 1 Durn. & E. 205. Inserting in the bill of lading the name of a consignee, gives him no property in the goods until a delivery of the bill

to him by some one authorized. *Allen v. Williams*, 12 Pick. 297; *Buffington v. Curtis*, 15 Mass. 528. In the present instance, the property, by the bill of lading, was deliverable to the order of the shipper, and, therefore, no question can arise as to the ownership of the highwines by the distilling company, at the time of the sale at St. Louis, if prior to the delivery of the bill of lading to plaintiffs, or at the time the latter occurred, if prior to the sale at St. Louis.

Conceding that Blumb represented the company, and had a bill of lading which was documentary evidence of the company's property in the goods, and the delivery of the same to plaintiffs was sufficient to pass the title to the highwines *in transitu* as against the company and subsequent purchasers, it could not have that effect against a prior purchaser of the goods, who either claims under an assignment and delivery of one of the triplicate bills of lading, or under a purchase and actual delivery of the goods by the shipper and owner. The delivery of a bill of lading passes title to the property only because it represents it, and the sale and delivery of the property itself, by the person authorized to sell it, is at least equally as effectual to pass the title as the delivery of one of the bills of lading. As the bill of lading represents the property, and its delivery to an assignee has the same effect as the actual delivery of the property, and as a mortgage or pledge for a pre-existing debt, is valid against subsequent purchasers, there is no ground for holding if the bill of lading was delivered to plaintiffs before the sale at St. Louis, that their title is not superior to that of defendants. Unquestionably an actual delivery of the goods in pledge for a prior indebtedness, would vest a title in the pledgee, which could not be successfully assailed by a subsequent purchaser. Hence, whether plaintiffs received the bill of lading as collateral for a pre-existing debt or for an advancement then made, is a matter of no consequence in this case.

Eminent jurists and judicial tribunals hold that one who for a prior indebtedness receives a bill of lading of

goods, either as collateral security or in payment of such indebtedness, has no such title as will avail even against the vendor's right of stoppage *in transitu*; in other words, that such an one, in such a controversy, is not to be regarded as a *bona fide* purchaser for value. *Loeb v. Peters*, 63 Ala. 243; *Harris v. Pratt*, 17 N. Y. 249; *Lessassier v. Southwestern*, 2 Woods 35; *O'Brien v. Norris*, 16 Md. 122; *Naylor v. Dennie*, 8 Pick. 199. And *Goodman v. Simonds*, 19 Mo. 106, and *Logan v. Smith*, 62 Mo. 455, recognize the principle announced in the foregoing cases. There is here, however, no question which makes a resort to the doctrines on that subject necessary to the determination of this cause.

If it should be found that Blumb had authority to draw the drafts and transfer the bill of lading in question, then the right to the property depends upon the priority of the transaction under which the parties respectively claim. Without inserting the instructions given by the circuit court to the jury, it is sufficient to say that they are not in harmony with the doctrines herein announced, and, therefore, the judgment of the court of appeals, reversing the judgment of the circuit court and remanding the cause, is affirmed.