THE MISSOURI PACIFIC RAILWAY COMPANY, Respondent, v. J. A. McLINEY, Administrator of W. J. AYERS, Deceased, Appellant.

Kansas City Court of Appeals, October 29, 1888.

1. **Practice** : PLEADING : DEMURRER TO PETITION, AS A WHOLE, CONTAINING SEVERAL COUNTS : CASE ADJUDGED. When a petition contains several counts (as in this case) and a demurrer is pleaded to the petition, as a whole, if either count of the petition states a good cause of action, it is the duty of the court to sustain the cause of action thus stated, and to overrule the demurrer.

2. **Contract** : BILL OF LADING : EFFECT OF INDORSEMENT AND DELIV-
ERY OF. Bills of lading, by the law merchant, are representatives
of the property for which they have been given ; and the indorse-
ment and delivery of a bill of lading transfers the property from
the vendor to the vendee,—is a complete legal delivery of the
goods,—divests the vendor's lien. (Benjamin on Sales, sec. 813).

3. **Action** : MONEY HAD AND RECEIVED : WHEN MAINTAINABLE FOR.
Whenever the defendant has received money which is the property
of the plaintiff, and which the defendant is obliged, by the ties of
natural justice and equity, to refund, the action for money had
and received may be maintained.

*Appeal from Jackson Circuit Court.*—HON. JAMES H.
SLOVER, Judge.

AFFIRMED.

Statement of case by the court.

The petition in this suit consisted of three counts.
The first and second were each upon a bill of exchange
which had been drawn by the defendant. The third
count of the petition was in words and figures fol-
lowing :

"And for another and further cause of action, plain-
tiff says that it is a corporation created under and by
virtue of the laws of the state of Missouri, and as such
corporation is, and was at the times hereinafter men-
tioned, engaged in the business of a common carrier of
freight and passengers between the city of Fort Scott in
the state of Kansas, and the town of Lovelady, in the
state of Texas ; and that on or before the sixth day of
October, 1883, the defendant had bargained and sold to
W. J. Murchison, of Lovelady aforesaid, two hundred
one-half sacks of flour, and to Messrs. L. P. Hemphill
& Co., one hundred and sixty one-half sacks and ten
barrels of flour ; that on the sixth day of October, 1883,
the said defendant drew his two certain drafts, or bills
of exchange, for the value of said flour, one dated at
Kansas City, Missouri, requesting the said W. J. Mur-
chison to pay to the order of J. D. Bacon the sum of
two hundred and thirty-five dollars on account of two
hundred one-half sacks of flour at thirty days' date,

and one bearing the same date, and requesting the said
L. P. Hemphill & Co. to pay to the order of said J. D.
Bacon the sum of two hundred and forty-one dollars
and fifty cents, on account of one hundred and sixty
one-half sacks and ten barrels of flour, at thirty days'
date ; that on the tenth day of October, 1883, the said
defendant shipped on plaintiff's railroad said barrels
and half-sacks of flour to said Lovelady, Texas, to his,
the shipper's, order, for which the plaintiff executed
and delivered to defendant its bill of lading covering
said shipment from Fort Scott to said Lovelady, afore-
said, which said bill of lading has upon its face, writ-
ten :   'Shipper's order, notify L. M. Hemphill and Co.,
Lovelady, Texas' ; that said defendant on or about the
dates aforesaid endorsed the said bill of lading in blank
and attached the two drafts hereinbefore described
thereto, and negotiated, sold and delivered said drafts
and said bill of lading covering the same to said J. D.
Bacon for value received from him, and that afterwards,
said J. D. Bacon, for value, sold and delivered said
drafts to the First National Bank of Fort Scott, Kan-
sas, and delivered to it, said bank, the said bill of lad-
ing covering the same ; that afterwards the said First
National Bank forwarded to its correspondent in Texas
said drafts and said bill of lading to its correspondent
or agent in Texas for acceptance and collection ; that
the plaintiff in accordance with the terms of said bill of
lading, transported said flour to said Lovelady, afore-
said, but in consequence of a dispute concerning freight
thereon, the said Hemphill and Co. and the said Mur-
chison refused to receive the same, and refused to
accept or pay the said drafts which accompanied and
were attached to the said bill of lading, and the said
drafts and the said bill of lading were returned to said
First National Bank of Fort Scott, Kansas ; that after-
wards the dispute about the freight on said flour having
been adjusted, the agent of defendant delivered the said
flour, to-wit, two hundred one-half sacks of flour to said
L. P. Hemphill and Co., without their having paid the

said drafts therefor and without their having in their or either of their possession said bill of lading, and while the said bank held the same as aforesaid.

" Plaintiff further says that upon the delivery of the said flour, said W. J. Murchison paid to the said defendant the amount of the draft so drawn upon him for said two hundred one-half sacks of flour, being the sum of two hundred and thirty-five dollars, and said L. P. Hemphill and Co. also paid to said defendant the amount of the draft so drawn upon them for said ten barrels and one hundred and sixty one-half sacks of flour, being the sum of two hundred and forty-one dollars and fifty cents, while said drafts were outstanding, unpaid and in the possession and ownership of said First National Bank, and the said defendant received said sums of money while his said drafts were unpaid and outstanding as aforesaid, and converted the same to his own use, although the said bank requested and demanded that he pay said sums to it as the owner of said drafts and said bill of lading.

" Plaintiff further says that by reason of the delivery of said flour to the said parties aforesaid, without the said drafts and bill of lading accompanying them, it became liable to pay to said bank the amount of said drafts, and that it did pay to said bank the amount thereof, to-wit, the sum of four hundred and seventy-six dollars and fifty cents, whereupon the said bank assigned and transferred in writing to this plaintiff all its right, title and interest in and to the said drafts, with the original bill of lading thereto attached and covering the same ; that plaintiff has often demanded the payment of the amount of money received by defendant, being the amount of the two drafts aforesaid, but the defendant has refused and still refuses to pay the plaintiff said sum or any portion thereof, and plaintiff says that an action has accrued to it to have and recover of defendant the amount of said drafts and interest ; that the said drafts and the said bill of lading are herewith filed and made a part thereof.

"Wherefore plaintiff prays judgment against the said defendant for the said sum of four hundred and seventy-six dollars and fifty cents with interest and costs."

It appears in appellant's abstract that the defendant filed a demurrer to the plaintiff's petition, on the ground that it failed to state a cause of action, which was overruled by the court and defendant excepted.

Issue being tendered by a general denial, the cause was tried by the court without the intervention of a jury.

The plaintiff's evidence in substance showed that in October, 1883, W. J. Ayers sold to W. J. Murchison and L. Hemphill & Co., in Lovelady, Texas, a car-load of flour, fifty barrels to each, that on October 6, 1883, he drew a draft at thirty days date on Murchison for two hundred and thirty-five dollars to the order of one J. D. Bacon and a similar draft on L. Hemphill & Co. for $241.50; that on the tenth day of October, 1883, he shipped on plaintiff's road said flour from Fort Scott, Kansas, to Lovelady, Texas, and on that day received of plaintiffs its bill of lading covering the shipment, as follows:

"FLOUR BILL OF LADING.

"The Missouri Pacific Railway Company.

"Fort Scott, Kan., Oct. 10, 1883.

"Received from W. J. Ayers the following packages, contents unknown, marked and numbered as per margin:

"ORIGINAL.

"In witness whereof, the agent has affirmed to three bills of lading, one of which being accomplished, the others to stand void.

"Marks, consignee and destination.　　　Description of articles.

10 barrels flour.

x x x x sacks flour.

| | |
|---|---|
| Shipper's Order | 360 half—48lb.—sacks |
| Notify | flour, 20,000. |
| | x x x x quarter sacks flour. |
| L. F. Hemphill & Co. | x x x x eight sacks flour. |
| | All at owner's risk. |
| Lovelady, | In consideration of the |
| | reduced tariff rate herein, |
| Texas, | we hereby release or dis- |
| | charge the carrier from |
| This contract | all liability as common |
| is from | carriers except a want of |
| | of ordinary care in trans- |
| Fort Scott Kansas | portation or delivery. |
| | And we hereby admit and agree |
| to | that we may read the above |
| Lovelady, Texas | (in red ink) before signing |
| | and that we fully under- |
| Contract rates, 75c. per | stand its terms and conditions. |
| cwt. | New Orleans Pa., |

Car No. 2828.

C. M. Eldis,

B.

Agt. The Mo. Pac. R'y."

That shortly after this shipment, W. J. Ayers endorsed the bill of lading, in blank, attached the two drafts to it and delivered them for value received to J. D. Bacon (this name some places is written Began, other places Regan), in payment of the carload of flour; that afterwards Bacon, for value sold and delivered said drafts with the bill of lading to the First National Bank of Fort Scott, Kansas ; that the First National Bank in due time sent the drafts to its correspondent in Texas for collection, where they were presented to the parties at Lovelady, but were not accepted, owing to a question of overcharge of freight pending between Ayers and the Texas parties. The drafts were returned to the First National Bank in Fort Scott, dishonored, yet not protested. Subsequently, the matter of overcharge was

adjusted between Murchison, Hemphill & Co. and Ayers, the Texas parties accepting the flour from plaintiff's agent at Lovelady, Texas, who delivered the flour to them without taking up the outstanding bill of lading, and without the order of the First National Bank at Fort Scott, the then owner and holder of it. After this, and after the expiration of the thirty days the drafts had to run, the Texas parties who had received the flour remitted $476.50 direct to W. J. Ayers in Kansas City.

The evidence further showed that the Fort Scott bank then presented a claim against plaintiff for $476.50, the amount of the drafts, which plaintiff was rendered liable for by reason of its delivery of the flour to the Texas parties without orders from said bank and when the bill of lading was outstanding. The plaintiff paid the claims in full and took an assignment to itself of the drafts and of the bill of lading.

It was further shown that plaintiff made demand on W. J. Ayers, both before and after its settlement with the First National Bank, to pay or refund to it the $476.50 which he had received from the Texas parties; that Ayers admitted that he had received the money twice, *i. e.*, when he first negotiated the drafts, and afterwards when he received it from parties receiving flour in Lovelady, Texas, but that he declined to pay it over to plaintiff.

The defendant offered no evidence, the finding of the trial court was against plaintiff on first two counts, and for plaintiff on third count in the sum of $476.50.

*Jewell & Thompson*, for the appellant.

(1) The drafts sued on were foreign bills of exchange. *Linville v. Welch*, 29 Mo. 203. (2) The drawer of a foreign bill of exchange cannot be held liable on a dishonored bill unless it has been protested. 3 Kent's Com. [12 Ed.] chap. 44, sec. 5; 1 Daniels on Neg. Inst. 8; *Linville v. Welch*, 29 Mo. 203; *Bank v. Barksdale*, 36 Mo. 563; *Adams v. Darby*, 28 Mo. 165. In the case last cited the court says: "The engagement of the drawer of

a bill is only conditional that he will pay if the drawee be requested at the maturity of the bill to pay and refuse to do so and due notice of its dishonor be given, and generally he will be discharged from all liability unless the bill is properly presented on the day it ought to be. (3) The only legal excuse for failing. to protest a foreign bill of exchange, good against the drawer, is the withdrawal of all funds prior to the maturity of the bill. *Adams v. Darby*, 28 Mo. 165. No such allegation is made and no such proof offered. (4) The third count states no cause of action for the same reasons that the first and second counts state no cause of action, to-wit, it does not show protest of the bill. *Adams v. Darby*, 28 Mo. 165. In this case, appellant's brief doubtless states the position of plaintiff here, and appellant's counter-claim in *Adams v. Darby* corresponds in all essentials to plaintiff's third count in this cause, as it alleges that plaintiff received the proceeds of the oil before the commencement of the suit. Plaintiffs rest their third count on the fact that Ayers received the proceeds of the flour. But our supreme court in last cited case say: "These principles are well established and though instances occur every day in which parties are allowed to take advantage of an omission by a person who had charge of them when it is obvious that no injury has been sustained by reason of the omission, it would be unwise and would shake the stability of the law, to multiply exceptions in order to save hard cases. If the plaintiff had withdrawn the proceeds of the oil before the bill matured," etc. There being no pretense of protest, certainly plaintiffs would make no claim on the drawer, aside from the allegation that he has received the proceeds. And yet plaintiff's proof showing that defendant received proceeds after maturity of bill, the case stands as though he had never received the proceeds. (5) There was no consideration and no *bona-fide* transfer of drafts to plaintiff. The receipts and written settlement with the Ft. Scott bank in evidence admit that plaintiff owed the $476.50, paid at the time of transfer of

defendants to it, on account of another matter, to-wit: The delivery of flour without taking up bill of lading. That without shipper's order and in violation of its contract of shipment, it had deprived the bank of its security for the drafts, and thereby damaged said bank $476.50 ; and paid said amount in full of said damages. Drawer was relieved of all liability on said drafts, by the failure to protest ; and the fact that after their maturity the parties in Texas sent him $476.50, created no liability on his part to plaintiff. Plaintiff is suffering wholly from its own wrong and confessed neglect of duty, and is without remedy.

*Robert Adams*, for the respondent.

(1) The bill of lading was negotiable, and the holder of it was the owner of the flour mentioned in it. R. S., secs. 558, 569 ; *Skilling v. Bollman*, 73 Mo. 665. (2) An action lies for money had and received whenever money has been received by defendant, which in equity and conscience belongs to the plaintiff, whether there is any privity between the parties or not. *Kurtz v. Livingston*, 15 Cal. 344 ; *Cary v. Curtis*, 3 How. (U. S.) 236, 249 ; *Tutt v. Ide*, 3 Blatch, 249 ; *McLane v. Martin*, 45 Mo. 393 ; 3 Wait's Actions and Defenses, 460. (3) Notice of non-acceptance or non-payment is not required in this state when notice was not required to be given at common law. R. S., sec. 541. (4) The object of the rule which requires notice is that upon non-acceptance or non-payment, the drawers may have an opportunity of preventing a further accumulation of their funds in the hands of the drawee, or withdrawing such as may be in his hands ; but when the reason for the rule ceases, or when it does not exist, the rule itself ceases to be applicable, and, therefore, no notice is required in those cases in which a want of notice could not possibly do the drawer any injury. 1 Wait's Actions and Defenses, 627 ; *Bank v. Griswold*, 7 Wend. (N. Y.) 166 ; *Barton v. Baker*, 1 Serg. & Rawles (Pa.) 334 ; *Duvall v. Bank*, 9 Gill & J. (Md.) 31 ; *Bank v. Hughes*, 17 Wend. (N. Y.)

94. The rule is also recognized in this state, as appears by the authorities cited by appellant.

RAMSAY, J. — I. The court properly overruled defendant's demurrer to plaintiff's petition. It was general in its character and was directed at the petition as a whole. If either count of the petition stated a good cause of action, it was the duty of the court to sustain the cause of action thus stated. *Roberts v. Walker*, 82 Mo. 200. Had defendant filed a separate demurrer to the two first counts of the plaintiff's petition, the trial court, probably, would have sustained them. At least a different question would have been presented to this court. The third count set forth in the foregoing statement, we think states a good cause of action.

II. The evidence fully sustained the allegations of this count of the petition, which is of the nature of an action for money had and received, and is not based upon non-protested drafts, as contended for by appellant's counsel. When W. J. Ayers endorsed and delivered the bill of lading, which covered his shipment of flour, for value to J. D. Bacon, he parted with all of his right, title and interest in and to the flour, as effectually as if he had delivered the flour directly to Bacon. "Bills of lading, by the law merchant, are representatives of the property for which they have been given, and the endorsement and delivery of a bill of lading transfers the property from the vendor to the vendee, is a complete legal delivery of the goods, divests the vendor's lien." Benjamin on Sales, sec. 813 ; *Skilling v. Bollman*, 73 Mo. 665. Therefore, leaving out of sight the drafts, when Bacon received the bill of lading he became the owner and shipper of the flour. It was subject to his order and could be delivered to or withheld from the consignee named in the bill of lading as he might direct. *Allen v. Williams*, 12 Pick. 297; *Buffington v. Curtis*, 15 Mass. 528. When Bacon assigned and delivered it to the First National Bank at Fort Scott, that bank was possessed of like rights and like powers. The mere fact that the First National

Bank failed to properly protest the drafts did not affect its right to the flour, or to the proceeds arising from a sale thereof. It yet retained ownership in the flour, and if Ayers was released from liability upon the drafts (which is conceded) by reason of the bank's failure to have them protested, then he could have had not even a contingent interest in the flour shipped, yet the evidence is that he received $476.50, the proceeds arising from the sale. Indeed he admits this. The bank, on his refusal to pay over this money, could have collected the same of him by suit. "Whenever the defendant has received money which is the property of the plaintiff, and which the defendant is obliged, by the ties of natural justice and equity, to refund, the action for money had and received may be maintained." *Cary v. Curtis*, 3 How. (U. S.) 236; *Krentz v. Livingston*, 15 Cal. 344; *Tutt v. Ide*, 3 Blatch. 249; *Bullard v. Hascall*, 25 Mich. 132; 4 Wait's Actions and Defenses, 469, *et seq*. The First National Bank having this right or chose in action, under our law as now construed, could assign it to plaintiff, and thereby enable plaintiff to maintain such suit. *Snyder v. Railroad*, 86 Mo. 613; *Hamlin v. Carruthers*, 19 Mo. App. 567.

The closing paragraph of the decision in case of *Adams v. Darby & Barksdale*, 28 Mo. *loc cit*. 166, is not in conflict with views herein expressed. It may be that the bank having failed to have its drafts duly protested would not only lose a right of action upon the drafts, but could not sue for the *original consideration* it paid in first instance for them. We can see why this should be. Neither the bank nor its assignee is here suing for the first consideration received by Ayers for the drafts, when he negotiated them, but plaintiff is suing for the $476.50 received by him from the consignees in Texas, which he ought to have immediately paid over to the party holding the bill of lading.

The judgment below was for the right party. It is, therefore, affirmed. All concur.