# FRANK ADAM COMPANY, Appellant, v. ORPHEUM THEATRE COMPANY, et al, Respondents.

### Kansas City Court of Appeals, February 12, 1917.

1. **MECHANICS LIENS: Bill of Lading: Shipper's Order: Express C. O. D.** S was the original contractor to install electrical equipment in a theatre building. He sublet part of the contract to A, in a distant city, to furnish a switchboard. He already owed A on an old account and the latter would not furnish the switchboard unless he would pay the old account. So it was agreed between them that A would ship part of the material to shipper's order with draft attached, and part by express C. O. D., the aggregate being for the amount of the old account. When the material arrived, S could not make payments and he procured the manager of the theatre to pay them and take up the bill of lading and get the material from the express company. The manager knew nothing of the agreement between S and A. It was *held*, that the manager paid for the material and took title to the material, and that A could not enforce a mechanic's lien for it.

2. ———: **Bill of Lading: Symbolical Delivery.** A bill of lading represents the property, and a delivery of the bill is a symbolical delivery of the property passing title thereto.

3. ———: **Express Company: Shipment C. O. D.: Mechanic's Lien.** An express company is a common carrier and if a vendor consigns freight by express "C. O. D." to his vendee who is under contract to put it in a building he is constructing, and who is unable to pay for it and procures the owner of the building to make payment and take the property, the owner obtains the title and the vendor cannot enforce a mechanic's lien against the building.

Appeal from Jackson Circuit Court.—*Hon. Thomas B. Buckner*, Judge.

AFFIRMED.

*New, Miller Camack & Winger* and *S. J. McCollough* for appellant.

*Hadley Cooper, Neel & Wright, Piatt & Marks, J. S. Bassett* and *Brown Harris* for respondents.

ELLISON, P. J.—Plaintiff's action is to enforce a mechanic's lien against the Orpheum Theatre building

in Kansas City, Missouri, for the sum of $1893.02. The judgment in the trial court was against the lien.

It appears that the Orpheum Company let a contract for a part of the material entering into the construction of the building to the defendant Shiras Electric Company, and that company sublet a part to the plaintiff whose place of business is St. Louis, Missouri, and the latter furnished a "switch board," which is the subject of this controversy. It appears that the parts of the switchboard were forwarded in two shipments, one by freight, over the Chicago, Burlington and Quincy Railroad, and the other by express. The railroad shipment was by bill of lading to the shipper's (plaintiff's) order with draft attached for $2271; and the shipment by express was "C. O. D."—collect on delivery $320.64. When these arrived in Kansas City, the Shiras Company was not financially able to pay the sums required and so stated to Mr. Lehman the Orpheum Company's Manager, requesting him to make the payments and take up the bill of lading which, as we have said, had plaintiff's order endorsed thereon; and to pay the sum required by the express company. Lehman did this and received the property which thereafter went into the Theatre building.

Plaintiff offered to prove that there were other dealings between these parties for which the Shiras company owed plaintiff $2591.64, and when it received the sums of money above named which, together, made the latter sum, it entered them to the credit and satisfaction of that account. It also appears that the invoice value of each shipment did not correspond with the amount required to be paid in the bill of lading and the C. O. D. express receipt. The amounts required to be paid being for more than the value of the material; in fact the sum demanded for these shipments was more than $700 in excess of the sum here sought to be enforced as a lien for the material.

Furthermore, that plaintiff refused to furnish this material until the old account was paid, and that it was then arranged between plaintiff and the Shiras Company that it would make the shipments as they were made, viz,

the money aggregating the old account to be paid before delivery of the material. These offers of proof were refused and the appeal is based upon that refusal. There was no evidence that Lehman knew of the alleged understanding between plaintiff and the Shiras Company.

We will first consider the railway shipment for which the shipper's order bill of lading was issued. We may concede that a consignor vendor may agree with a vendee (as between the two) that he will ship the goods or material purchased, to be delivered only upon payment of an old account, and then afterwards pursue the vendor for the price of the articles shipped, and, where there is a lien, enforce that also.

But that is not the case presented. The bill of lading, when its conditions were performed, viz, by payment of the sum required, passed the title to the property to any party authorized to make the payment *for the property he obtains by the payment.* Lehman did not pay for property which was evidenced by some other account. He paid *for what he got.* If paid for there could be no lien. When the bill of lading was delivered to him that he might pay the money which payment was a condition to a delivery of the property, and when he paid the money, he became the owner of the property, or, at least, became possessed of an interest in it for the amount he advanced. [Newcomb v. Railroad, 115 Mass. 230; Alderman v. Railroad, 115 Mass. 233; Joslyn v. Grand Trunk Ry., 51 Vt. 92; 1 Hutchison on Carriers, sec. 191.] And it being conceded that the money paid by Lehman was more than the price of the property, plaintiff was divested of any lien or claim thereon.

A bill of lading stands for the property and a delivery of the bill, even without endorsement, is a symbolical delivery of the property. [Davenport Bank v. Homeyer, 45 Mo. 145; Scharff v. Meyer, 133 Mo. 428, 447; Skilling v. Bollman, 73 Mo. 665, 669; Mo. Pac. Ry. v. McLiney, 32 Mo. App. 166; Markle Co. v. Lead Works, 102 Mo. App. 158, 168; Live Stock v. Ry., 87 Mo. 330, 336.] In this case plaintiff put out the bill of lading with knowledge

of the law that a delivery of the bill to a third party was a transfer of the title to the property to that party, whenever the money condition for such transfer was· complied with. Plaintiff put it in the power of Shiras & Company to transfer the property through a transfer of the bill, and it should not be allowed to harm such transferee who knew nothing of its agreement with the Shiras Company. [Dymock v. Ry. Co., 54 Mo. App. 409 and cases cited; Neuhoff v. O'Reilly, 93 Mo. 164.]

The same result follows concerning the property sent by express C. O. D. Express companies are common carriers. (Sec. 3286, R. S. 1909; Porter on Bills of Lading, sec. 8), and the letters "C. O. D." (collect on delivery) authorized a delivery of the property on payment of the money by the consignee, or any one authorized by him to receive it. It operated as a transfer of the property when, by request of the consignee, he paid the money called for as a condition to delivery. Like in the instance of the bill of lading, he became, at least, possessed of an interest in the property sufficient to secure what he paid, and as that was more than the price of the property due to plaintiff, the latter has nothing left upon which to base a lien.

Under the provisions of section 1156, Revised Statutes 1909, bills of lading and transportation receipts are made negotiable. We have not considered that fact in arriving at our conclusion, since we find ample reason for our decision in the considerations we have stated. So too, the view we have taken makes it unnecessary to discuss the points suggested by counsel for the Shiras Company.

The result is to affirm the judgment. All concur.