Bank v. M., K. & T. R'y Co.

MIDLAND NATIONAL BANK OF KANSAS CITY, Respondent, v. MISSOURI, KANSAS & TEXAS RAILROAD COMPANY, Appellant.

Kansas City Court of Appeals, April 1 and May 20, 1895.

1. **Bills of Lading**: DELIVERY OF MERCHANDISE AFTER TRANSFER OF BILL: ACTION. A carrier who issues a shipper's order bill of lading and then delivers the merchandise to the transferee of the bill after such transferee has pledged the bill, is liable to the pledgee for the nondelivery of the merchandise.

2. ———: POWER OF TRANSFEREE: SYMBOL. A transferee of a bill of lading is the owner with full power of disposition, and his transfer of such bills by delivery stands as an actual change in the possession of the merchandise itself.

3. ———: NONNEGOTIABLE: STATUTE: COMMON LAW. The words "nonnegotiable" stamped on a bill of lading does not destroy its assignability, but merely exempts it from the provision of the statute, and it must then be treated as at common law.

4. ———: DELIVERY: CARRIER. A carrier who delivers the goods to the original consignee without surrender of a bill of lading, assumes the risk of its previous transfer to an innocent party.

5. ———: ———: INDORSEMENT. A delivery of a bill of lading without indorsement for value, transfers the property in the goods it covers.

*Appeal from the Jackson Circuit Court.*—HON. J. H. SLOVER, Judge.

AFFIRMED.

*Jackson & Montgomery* and *Hugh C. Ward* for appellant.

(1) Bills of lading are not negotiable in the same sense as bills of exchange and notes. They are assignable, and the transfer of the bill has the same effect as the delivery of the property covered by it, and under the statute of this state when the words "not negotia-

ble" are printed across the face of a bill of lading, it stands as though there was no statute, and is governed by general rules.    Acts of 1868, p. 13; Acts of 1869, p. 91; *Dymock v. Railroad*, 54 Mo. App. 400; *Bank v. Railroad*, 42 Mo. App. 284; *Dickson v. Elevator Co.*, 44 Mo. App. 498; *Railroad v. McLiney*, 32 Mo. App. 166; *Skilling v. Bollman*, 73 Mo. 665; *Bank v. Homeyer*, 45 Mo. 145.    (2) If delivery has been made without surrender of bill of lading, before transfer to a third party, such purchaser acquires nothing and can not recover damages for a failure to deliver to him.    *Skilling v. Bollman, supra; Bank v. Railroad, supra,* and cases above cited.    An assignee gets no greater rights than the assignor had.    Hutchinson on Carriers, sec. 129, p. 351.    A purchaser of a bill of lading, in consideration of an antecedent indebtedness, is not a *bona fide* holder.    Hutchinson on Carriers, sec. 129, p. 141, note 1; *Skilling v. Bollman, supra.*    (3) A holder, other than the consignee, of an unindorsed bill of lading is not entitled to delivery of the property covered thereby. Hutchinson on Carriers, section 131*c*; *Weyland v. Railroad*, 75 Iowa, 573.    Even transfer of negotiable paper, without indorsement, is open to all defenses in like manner as nonnegotiable paper.    *Patterson v. Cave*, 61 Mo. 439.    (4) Transportation and delivery must be completed in a reasonable time—regard being had to the character of the goods.    Hutchinson on Carriers, sec. 328, 329, *et seq.*    A bill of lading only represents the goods while in transit.    *Douglass v. Bank*, 32 Am. and Eng. Railroad Cases, 510; Porter on Bills of Lading, sec. 421, *et seq.*

*Lathrop, Morrow, Fox & Moore* for respondent.

(1) It being conceded, therefore, that there was evidence to support this finding of fact, the finding of

the court as to a matter of fact stands as the verdict of the jury, with which this court will not interfere. *Mead v. Spaulding*, 94 Mo. 43; *Dollman v. Munson*, 90 Mo. 85; *Pike v. Martindale*, 91 Mo. 268; *Minter v. Cupp*, 98 Mo. 26; *Ewing v. Phillips*, 35 Mo. App. 144; *Nelson v. Nelson*, 41 Mo. App. 130; *Coquard v. Wernse*, 100 Mo. 137. Defendant's refused instructions. The burden of the appellant's complaint seems to be the refusal of the court to give the following instructions, which will be taken up and discussed in their order: (2) The defendant, in wrongfully permitting *quasi* negotiable instruments, such as bills of lading, to be put afloat, is, on the principle of equitable estoppel, precluded from questioning their validity. *Dymock v. Railroad*, 54 Mo. App. 400; 18 Am. and Eng. Encyclopedia of Law, pp. 610, 627, 629, 634, 641; *Bank v. Bank*, 71 Mo. 183; *Lee v. Turner*, 89 Mo. 489; *Neuhoff v. O'Reiley*, 93 Mo. 164; *Cowdery v. Vanderburg*, 101 U. S. 572; *Moore v. Bank*, 55 N. Y. 41; *McNeill v. Bank*, 46 N. Y. 325; *Davis v. Bechstein*, 69 N. Y. 442; *Combes v. Chandler*, 33 Ohio St. 178; *Horn v. Cole*, 51 N. H. 287; *Bank v. Phœnix Co.*, L. R. 5 Ch. D. 217; *Bank v. Homeyer*, 45 Mo. 145; *Goodwin v. Roberts*, L. R. 10 Ex. 76; *Herrick v. Atwood*, 25 Beav. 205; *Briggs v. Jones*, L. R. 10 Eq. 92; 18 Am. and Eng. Encyclopedia of Law, p. 629; *Bank v. Durfee*, 118 Mo. 431; *Com. Co. v. Bank*, 116 Mo. 573; Colebrook on Collateral Securities, sec. 15; *Walter v. Railroad*, 56 Fed. Rep. 369; *Walker v. Railroad*, 63 Fed. Rep. 391; *Lee v. Turner*, 89 Mo. 489. (3) Plaintiff is a *bona fide* holder, for value, of the bills of lading sued upon, notwithstanding the bills taken by plaintiff were subject to change. *Logan v. Smith*, 62 Mo. 455; *Neuhoff v. O'Reiley, supra; Savings Institution v. Holland*, 38 Mo. 49; *Reinhardt v. Wine Co.*, 42 Mo. App. 171; *Conrad v. Fisher*, 37 Mo. App. 352; Jones on Pledges, sec. 470. (4) The fact that

the bills of lading are stamped "not negotiable," does not affect the plaintiff's rights. Porter's Law of Bills of Lading, chap. 22, sec. 452; *Shaw v. Railroad*, 101 U. S. 557; *Bank v. Railroad*, 46 N. W. Rep. 560; *Dymock v. Railroad, supra.* (5) No indorsement of the bills of lading to plaintiff was necessary. *Buffington v. Curtis*, 15 Mass. 487; *Railroad v. Irvin*, 46 Ind. 180; Porter on Bills of Lading, sec. 496; *Bank v. Transportation Co.*, 69 N. Y. 373.

GILL, J.—This is an action for damages for failure to deliver three car loads of corn and two of flax, in pursuance of bills of lading held by plaintiff. The cause was tried by the court sitting as a jury, resulting in a finding and judgment for plaintiff in the sum of $1,443.21, and defendant appealed.

The facts giving rise to the controversy are substantially as follows: Prior to October 28, 1891, the Currier Commission Company was engaged in the grain and commission business in Kansas City, Missouri. It did its banking business with the plaintiff, and had done so for several years prior to its failure. The commission company, not having sufficient funds of its own to carry on the business to its satisfaction, arranged with the plaintiff for accomodations, which were represented by notes for a fixed amount, and by an overdraft for an additional amount, that would vary from day to day. An agreement had been made between the plaintiff and the commission company, as a part of the arrangement, for credit, by which the amount of the latter's indebtedness to the bank should be kept constantly secured, by a pledge of original shipper's bills of lading and 'elevator receipts. The agreement also provided that the collateral should be subject to change, by withdrawing such original shipper's order bills of lading as the commission com-

pany desired to use, and the substitution of other orig-
inal shipper's order bills of lading in the place of those
withdrawn. The agreement for credit contemplated
that the Currier Commission Company should, at all
times, have deposited with the plaintiff sufficient col-
lateral in shipper's order bills of lading and eleva-
tor receipts, to cover the indebtedness. It was upon
the faith of such an arrangement that credit was ex-
tended by plaintiff. A daily computation was made by
the plaintiff, at the close of business, to see that the
account was kept properly secured. The bills of lading
would be figured up at an estimated number of bushels
per car, at the current value per bushel, and if the total
amount of the indebtedness of the commission company
on any particular day was out of proportion to the
amount of collateral, the company would be called
upon for additional collateral.

During the months of July, August and Septem-
ber, 1891, one Follansbee, a purchasing agent of the
Currier Commission Company, shipped at different
times, from Burlington, Kansas, and over defendant's
road, the three cars of corn and two car loads of flax
seed. The former were consigned to Kansas City,
"shipper's order" with instructions to notify Currier
Commission Company, Kansas City; and the latter
were consigned to Chicago, "shipper's order, notify
Currier Commission Company," and so the bills of
lading were made out to "shipper's order, notify Cur-
rier Commission Company."

In payment Follansbee drew his drafts on the Cur-
rier Commission Company, and attached to each draft
the proper bill of lading. When such drafts and bills
of lading made their appearance in Kansas City, the
Currier Commission Company paid such drafts by its
checks on the Midland Bank, and took up the bills of
lading. Plaintiff's evidence tends to prove that the

Currier Company then placed these bills of lading with plaintiff bank to be held as collateral, as before stated. There was no positive and direct testimony as to the exact date of these deposits. The Currier collaterals were kept in a tin box in the vault of the bank, but no memorandum was made showing what was there, or when left or taken away. As to this matter, it is sufficient to say that there was evidence tending to prove that these five bills of lading were deposited with the bank immediately upon the receipt thereof by the Currier Company, and on the other hand, some testimony tending to show that they were withheld by the commission company for some time thereafter.

It seems undisputed that, when these five car loads of grain and seed arrived at Kansas City, the defendant company delivered the same to the Currier Company, or, which was, in effect, the same, at Currier's request, rebilled same to other points; and this, too, without the production, surrender, or cancellation of the original shipper's order bills of lading. On the twenty-eighth day of October, 1891, the Currier Commission Company failed in business, and, at the time, owed the plaintiff bank in excess of the collaterals. Thereupon the plaintiff demanded the grain and seed called for by the bills of lading. The defendant was unable, of course, to produce it, because already delivered to the commission company. This suit was then brought, with the result before stated.

The declarations of law given by the trial court, when considered in the light of the judgment rendered, clearly indicate what were the facts found. For, by instruction number 4, the court declared the law to be: "That if it appear from the evidence that the defendant received at Burlington, Kansas, from E. E. Follansbee, the grain and flax mentioned in the bills of lading read in evidence, and the defendant thereupon executed and

delivered to said Follansbee the said bills of lading and said bills of lading were afterward attached to drafts drawn on the Currier Commission Company by said Folansbee, and said drafts paid by said Currier Commission Company, and said bills delivered to said Currier Commission Company, then the latter became the owner of the property covered thereby; and if thereafter said Currier Commission Company, while the owner of said property, in the usual course of business and for value, delivered said bills of lading to plaintiff as collateral security, then plaintiff received the title of said Currier Commission Company and became the owner of the grain and flax represented by sa'd bills; and if thereafter the defendant refused on demand to deliver said goods to plaintiff, the finding must be for plaintiff."

And further, by defendant's instruction number 14, the court declared the law to be: "That if the court believes from the evidence that the bills of lading mentioned in the petition were delivered to the Currier Commission Company, at the direction and on the written order of the shipper, Follansbee, and that the said Currier Commission Company, *while it was the holder of said bills of lading*, directed the defendant as to the places and manner of delivery of the car loads of corn mentioned in said bills of lading, respectively, and that defendant delivered the same in accordance with said directions, and that said Currier Commission Company receipted to defendant therefor, and that plaintiff, after such delivery and receipt, obtained possession of said bills of lading respectively, then your finding must be for defendant."

Since, now, under these instructions, the court entered its judgment for the plaintiff, we must assume that it found that the bills of lading, so made by the defendant to the order of the shipper, Follansbee, were indorsed by said shipper and delivered to the Currier

Commission Company, and that said commission company, for value delivered said bills of lading to the plaintiff bank; that said last transfer was made while the commission company was the holder of said bills and therefore the owner of the said grain and flax, and, further, that such transfer to plaintiff took place before the defendant railroad had made a delivery to said commission company.

On this state of facts it is difficult to understand on what theory the defendant can hope to defeat this action. Much of the argument of defendant's counsel is made on facts different from those found by the court. After a careful reading and consideration of the entire evidence, we find not only ample to sustain the court's finding, but fail to discover any reason to question its correctness.

When Follansbee, the shipper, indorsed and delivered the bills of lading to the Currier Company, it became the owner thereof, with full power of disposition; and, while so the owner, it had the absolute right, by the transfer of these bills of lading, to convey its title to the plaintiff bank. And this was done; the delivery of the bills of lading to the bank effected a pledge of the property, to the same extent and with the same validity as if it had been actually delivered. The bills of lading were symbols of the grain—represented it— and their transfer by delivery stood as an actual change in the possession of the grain itself. The plaintiff bank held the property as collateral security for the advances made to the Currier Company; and so far as it was necessary to the holder's self-protection, plaintiff had the legal title and was vested with all the rights and remedies of a purchaser for value. Porter on Bills of Lading, sec. 510. *et seq.*, Hutch. on Carriers, sec. 129; *Dymock v. Railroad*, 54 Mo. App. 400.

The words "not negotiable," stamped on the face of the bills of lading, in nowise destroyed their assignability. The sole effect of these words was to exempt such bills of lading from the provisions of our statute in relation thereto. Section 745, R. S. 1889; *Dymock v. Railroad*, *supra*. They are to be treated, then, as at common law.

The case of *Skilling v. Bollman*, 73 Mo. 665, cited and relied on by counsel, fails to save the defense here. There a distilling company at Beardstown, Illinois, consigned two hundred barrels of high wines to St. Louis, taking triplicate shipper's order bills of lading therefor. The secretary of the distilling company attached one of these bills of lading to a draft of $7,000 on the consignee at St. Louis, and deposited the same with the plaintiff bankers at Beardstown, as collateral security for a pre-existing indebtedness. About the same time (and whether before or after the delivery of the bill of lading to the plaintiff was not clear) an officer of the distilling company appeared at St. Louis and took charge of and sold the liquors to the defendant. The contest arose then between the plaintiff, the holder of the bill of lading, and the defendant, the purchaser at St. Louis, as to who had the better title to the goods. The supreme court held that the controlling question was whether the delivery of the bill of lading to plaintiffs, or the sale to defendants, was prior in point of time. After discussing the law as to the effect of transferring the bill of lading—whether in the way of an absolute purchase or as collateral security for a present or a pre-existent debt—Judge HENRY uses this language: "If, therefore, the delivery of the bill of lading to plaintiffs occurred before the sale to the defendants, it makes no difference that it was for a pre-existing debt, or whether it was an absolute sale of the goods, or intended as a collateral security for the debt. On the other hand,

if the defendant's purchase was prior to the delivery of the bill of lading to the plaintiffs, their title is superior to that of the plaintiffs." * * * "The delivery of the bill of lading passes title to the property only because it represents it, and the sale and delivery of the property itself, by the person authorized to sell it, is as effectual to pass title as a delivery of one of the bills of lading. * * * Unquestionably, an actual delivery of the goods in pledge for a prior indebtedness would vest a title in the pledgee which could not be successfully assailed by a subsequent purchaser. Hence, whether plaintiffs received the bill of lading as collateral for a pre-existing debt, or for an advancement then made, is a matter of no consequence in this case."

Treating, now, the defendant railroad with the same consideration as was awarded to the St. Louis purchaser in the *Bollman case*, and yet the plaintiff in the case at bar is clearly entitled to recover, if we concede the fact, as found by the trial judge, that said bank acquired the bills of lading prior to the delivery of the goods to the Currier Company, Judge BIGGS in *Alabama Nat'l Bank v. Railroad*, 42 Mo. App. 284, thus correctly states the rule: "If the carrier delivers the goods even to the original owner (when he is the consignee), or to the consignee himself, without the surrender of the bill of lading, it takes upon itself the risk of the previous transfer of the bill of lading to some innocent party."

The further objection that some or all of these bills of lading were delivered to the plaintiff without the written indorsement of the Currier Company, is of no consequence. A delivery of a bill of lading without indorsement, for value, transfers the property in the goods it covers. *Davenport Nat'l Bank v. Homeyer*, 45 Mo. 145.

Some other questions of minor importance are discussed in the briefs. In none of them do we find any substantial objection to the judgment. The case was fairly tried and decided on correct views of the law.

The judgment, therefore, will be affirmed. All concur.