(121 App. Div. 182)

### GASS v. ASTORIA VENEER MILLS.

(Supreme Court, Appellate Division, Second Department. July 23, 1907.)

SALES—REFUSAL OF CARRIER TO DELIVER—REMEDY OF BUYER.

Plaintiff ordered lumber of T. to be delivered free on dock at N., plaintiff to pay therefor by paying cash for the freight on delivery and the balance by 90-day note. Before its arrival T., with plaintiff's assent, assigned its claim for purchase price to defendant. The last day of March the lumber, which had arrived consigned to T., was discharged on dock at N. The next day plaintiff received, from T. and defendant, notice of the arrival with unreceipted bill for lumber and a bill of lading. Two days later plaintiff borrowed of W., defendant's secretary, money with which to pay the freight, receiving a check therefor and giving his note for such amount, and another note for the agreed amount of the bill for the lumber, both secured by mortgage, with agreement that all should be

surrendered on payment of the note for the, check and delivery of a new note for the lumber, indorsed by M. and payable in 90 days from that date. At the same time plaintiff received a receipted bill for the lumber, with the notice of arrival of the lumber, indorsed by T., and a direction to the steamboat company, which carried the lumber, to deliver it to plaintiff. On the next two days plaintiff presented all the papers and tendered the check to the steamboat company, and demanded the lumber, which was refused, because of a check, instead of money, being tendered; and on the following day, having tendered money, delivery of the lumber was refused, with the statement that a stop order had been received from the place of shipment. Thereafter plaintiff took up his notes and chattel mortgage, paying in cash the note for the check, and giving in place of the other his note indorsed by M. *Held* that, having thereafter demanded of defendant surrender of such note or delivery of the lumber, coupled with an offer to deliver up the shipping papers, and defendant having refused such demand, plaintiff could not restrain defendant from transferring or enforcing the notes; title to the lumber having vested in plaintiff when it was discharged on the dock, or at least when he received the bill of lading, there being no claim that the lumber was not according to contract, and defendant having done everything required to vest title and possession in plaintiff, and plaintiff having only himself to blame for not having received the lumber of the steamboat company.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 43, Sales, §§ 381–385.]

Hooker, J., dissenting.

Appeal from Special Term, Kings County.

Action by John H. Gass against the Astoria Veneer Mills. From a judgment restraining defendant from transferring or enforcing payment of a promissory note made by plaintiff to the order of defendant, and directing the surrender and cancellation thereof, and for damages and costs, defendant appeals. Reversed, and new trial granted.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, HOOKER, and MILLER, JJ.

John W. Weed (Richmond Weed, on the brief), for appellant.
John F. Brush, for respondent.

WOODWARD, J. There is no substantial dispute as to the facts in this case. The plaintiff, on or about the 3d day of January, 1905, ordered from one John B. Wickery, an agent of the International Mahogany Company, 25,000 feet of cypress lumber of specified quality and size, to be delivered to plaintiff free on board the dock in the city of New York, at the price of $27 per 1,000 feet, the plaintiff to pay therefor by paying cash for the freight charges at the time of delivery and the balance by his promissory note payable in 90 days thereafter. On or about the 4th day of March, 1905, a carload of cypress lumber was shipped from Gibson, La., by the Gibson Cypress Lumber Company, by way of the Morgan's Louisiana & Texas Railroad & Steamship Company, consigned to the International Mahogany Company at the city of New York. On the 18th of the same month the International Mahogany Company assigned its claim for payment of the purchase price of said bill of lumber to the defendant; the plaintiff assenting. This car load of lumber arrived at the Morgan Steamship Company's dock in the city of New York on the 30th day of March, 1905, and was completely discharged on said dock at 3 p.

m. on March 31, 1905. On the 31st of March the International Mahogany Company and the defendant notified the plaintiff in writing of the arrival of said lumber, and this notification was received on Saturday, the 1st day of April, 1905, together with an unreceipted bill for the lumber and a bill of lading, by the plaintiff.

There is no question here that the lumber delivered was of the quality and character contemplated, or that there was the amount agreed upon, and under well-settled rules the plaintiff, on the delivery of the lumber at the point fixed in the contract, became vested with the title to such lumber. It may be assumed that there was, as between the vendor and purchaser, a right on the part of the plaintiff to inspect the lumber, and to reject the same if it did not come up to the requirements; but there can be no presumption that the sellers violated the obligations of their contract, and clearly, in the absence of allegations and proofs showing that the lumber was not such as the contract called for, there can be no doubt of the fact that upon the delivery by the carrier at the point designated in the contract the title would vest immediately in the plaintiff, and the lumber would thereafter be at the risk of the plaintiff. Pierson v. Crooks, 115 N. Y. 539, 548, 22 N. E. 349, 12 Am. St. Rep. 831. Under the facts as they must be presumed here, the lumber was just what the plaintiff had bargained for, and, if this is true, the fact that the plaintiff did not have an opportunity to inspect the lumber previous to the time that the steamship company refused to deliver the same to him has no possible bearing upon the case. He owned the lumber; it had not only been delivered to him at the point designated, but he had been given the bill of lading, with the intention on the part of all parties that it should be effective; and it is settled beyond dispute that in such a case the delivery of the bill of lading not only passes title to the party receiving the same, but, in the eye of the law, the transfer of the bill of lading is regarded as an actual delivery and an actual change of possession of the property. Commercial Bank of Keokuk v. Pfeiffer, 108 N. Y. 242, 250, 15 N. E. 311, and authorities there cited.

With the title to the lumber thus vested in the plaintiff a complicating transaction took place, although we do not see that it really made any particular difference with the merits of the case. On Monday evening, April 3, 1905, three days after the delivery on the dock, and two days after notification of such delivery and the delivery of the bill of lading, representatives of the defendant went to the office of the plaintiff and the latter requested Mr. Williams, secretary of the defendant, to loan him $214.50, the amount of the freight. An arrangement was entered into by which the plaintiff borrowed of Mr. Williams the above-mentioned amount, giving his promissory note therefor, at the same time delivering his other promissory note for $538.12, the agreed amount of the bill for said lumber. At the same time the plaintiff gave a chattel mortgage upon certain machinery to secure the payment of these notes; it being agreed that the chattel mortgage should not be recorded, and that it should be surrendered, together with the said note for $538.12, upon the payment of the smaller note and the delivery to the defendant of a new note for the larger amount, indorsed by one John Mulstein and payable in 90 days from the 3d

day of April, which, it will be observed, is in accord with the contract of sale alleged and proved, except that there was originally no provision for an indorser of this note, and the plaintiff had agreed to pay the freight on the delivery. Defendant's secretary delivered a check to the plaintiff for the amount of the freight, and receipted the bill for the lumber, at the same time delivering the notice of the arrival of said lumber, indorsed by the International Mahogany Company, with a direction to the said steamboat company to deliver said lumber to the plaintiff. On April 4, 1905, the plaintiff sent a truckman with Mr. Williams' check, the shipping papers, etc., and the truckman delivered the check with such papers; but the steamship company refused to deliver the lumber, stating that it would not accept the check for the freight. On the following day the plaintiff made a second demand for the delivery of the lumber, tendering the check, and delivery was again refused; the steamship company returning the check and the shipping papers. On the 6th of April the plaintiff secured the cash upon the check, tendered the same, with the shipping papers, and demanded the lumber. At this time the steamship company refused to deliver the goods, stating that the delivery had been stopped by notice from New Orleans, from whence the lumber was shipped, because it had not been paid for, and the steamship company persisted in its refusal to deliver the lumber. Within one week of April 3, 1905, the plaintiff delivered $214.50 in cash to the defendant, taking up the note for that amount, at the same time delivering a new note for the sum of $538.12, indorsed as per agreement, whereupon the notes and chattel mortgage first above referred to were surrendered, and this action is brought to restrain the defendant from collecting or transferring the note for $538.12; the plaintiff having demanded the surrender of such note or the delivery of the lumber, and having offered to deliver up the shipping papers, but the defendant refusing to comply with the demand. The plaintiff has judgment in his favor, the defendant appealing.

Whether we regard the note here involved as resting upon the original consideration, or as having vitality through the consideration of the surrender of its predecessor, does not seem important. The title to the lumber vested in the plaintiff, as a matter of law, as early as April 1, 1905, if not on the 31st day of March. From that time forward he owed the purchase price of the lumber to the defendant, and it remained in the possession of the steamship company at the risk of the plaintiff. If the plaintiff had secured the cash upon the check on the 4th day of April, and had tendered the same, with the shipping papers, there is no reason to believe that the lumber would not have been delivered. Certainly at that time the steamship company did not refuse delivery because of any stop orders, but because the plaintiff had tendered a check instead of cash. The plaintiff appears to have persisted in tendering a check on the 5th day of April, and it was not until the 6th day of April that, upon a tender of cash, the steamship company refused to deliver because of the alleged stop order. There is no question raised that the plaintiff had a perfect right to receive the lumber on all of these days so far as the defendant is concerned. It had done everything that was required to vest title and possession in the plaintiff, and if the latter had paid the freight, as he was

obligated to do under his contract, it must be presumed that the lumber would have been delivered. This was clearly the plaintiff's understanding of the situation, for he gave his note and received in return a receipted bill for the lumber, and now to prevent the defendant from making use of this note would be to impose upon it the penalty of the plaintiff's delay in reducing the lumber to possession as ·contemplatd by the contract. The defendant had delivered the lumber, the plaintiff had accepted the delivery by taking the bill of lading and delivering his note in payment, and from that time, under all of the authorities, the lumber remained in·the hands of the carrier subject to the plaintiff's risk. What might be the situation if the lumber actually delivered had not complied with the requirements of the contract it is not necessary here to determine, for no such facts are disclosed, and the presumption must be, what appears to.have been assumed in the pleadings, that the lumber delivered and accepted by the plaintiff was the same lumber contemplated in the contract. He has only himself to blame, so far as appears from the record, for not having the lumber in' his own possession, and it would be contrary to law to permit this judgment to stand.

The judgment appealed from should be reversed.

Judgment reversed, and new trial granted; costs to abide the final award of costs. All concur, except HOOKER, J., who dissents.