### GASS v. ASTORIA VENEER MILLS.

(Supreme Court, Appellate Division, Second Department.   October 12, 1909.)

1. CARRIERS (§§ 51, 82*)—CONTRACTS—"BILL OF LADING"—DELIVERY.

A bill of lading in the first instance represents the contract between the shipper and the carrier, by which, for a specified sum, the carrier undertakes to deliver the goods received to the rightful owner, and the consignee named in the bill is presumptively the owner, and entitled, on complying with the contract, to demand possession thereof, and a delivery to the consignee or by his direction is a good delivery.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 148, 299; Dec. Dig. §§ 51, 82.*

For other definitions, see Words and Phrases, vol. 1, pp. 790–795.]

2. CARRIERS (§ 56*)—CONTRACTS—BILL OF LADING.

At common law the title to goods while in possession of the carrier as bailee may be transferred by indorsement and delivery of the bill of lading to a third person whose title to the goods is no better than that of the person by whom the transfer is made.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 168; Dec. Dig. § 56.*]

3. CARRIERS (§ 58*)—CONTRACTS—BILL OF LADING.

In the absence of any statute, the transferee of a negotiable bill of lading acquires no better title to the goods represented thereby than his transferee had, unless the true owner is estopped from asserting his right as against the transferee, for the negotiability of a bill of lading means assignability so far as the written contract of carriage is concerned, and, so far as the goods described in the bill are concerned, a conveyance of such title thereto as the transferror had.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 179; Dec. Dig. § 58.*]

4. CARRIERS (§ 59*)—CONTRACTS—BILL OF LADING.

Factors' Act (Laws 1830, p. 203, c. 179) § 3, providing that every agent intrusted with the possession of any bill of lading shall be deemed the true owner thereof so far as to give validity to any contract made by the agent for the sale of the goods, and Pen. Code, §§ 628–634a, providing that the agent of any carrier who delivers to another any merchandise for which a bill of lading has been issued is punishable by imprisonment unless the receipt is surrendered at the time of delivery or unless the receipt bears on its face the words "not negotiable," give to a bill of lading a higher quality of negotiability than simply to make it transferable by indorsement and delivery, and the voluntary act of the owner of property in giving to another a bill of lading which unqualifiedly directs the carrier to deliver the goods to the person named therein or to his order is sufficient to estop such owner from making any claim to the goods as against a person dealing in good faith with the person named therein.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 179; Dec. Dig. § 59.*]

---

5. CARRIERS (§ 55*)—CONTRACTS—BILL OF LADING.

The words "not negotiable," stamped on the face of a bill of lading, do not prohibit transfer of the bill and of the contract represented thereby by indorsement and delivery, as, under Code Civ. Proc. § 449, any contract is transferable and enforceable by suit in the name of the assignee, but the transferror of such a bill has only his common-law rights, and cannot avail himself of Factors' Act (Laws 1830, p. 203, c. 179) § 3, providing that an agent intrusted with the possession of a bill of lading shall be deemed the true owner thereof so far as to give validity to any contract for the sale of goods thereunder.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 168; Dec. Dig. § 55.*]

6. CARRIERS (§ 82*)—CONTRACTS—DELIVERY—LIABILITY.

Where the bill of lading fails to show who the consignee is, delivery without ascertaining from the shipper to whom the same is to be made makes the carrier liable in conversion.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 299; Dec. Dig. § 82.*]

7. CARRIERS (§ 78*)—CONTRACTS—DELIVERY—LIABILITY.

Where the bill of lading shows that rights to the property described therein are reserved to the shipper, and that the property shall only be delivered on conditions which shall protect those rights, delivery in disregard of the conditions makes the carrier liable in conversion.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 78.*]

8. CARRIERS (§ 59*)—BILL OF LADING—STOPPAGE IN TRANSITU.

While the right of stoppage in transitu may be defeated by the indorsement and delivery of an unconditional bill of lading to a bona fide indorsee for a valuable consideration without notice, yet, where the indorsee has notice of the facts or of a fact sufficient to put him on inquiry which will disclose the facts, the right may be exercised as against him.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 179–190; Dec. Dig. § 59.*]

9. CARRIERS (§ 59*)—BILL OF LADING—STOPPAGE IN TRANSITU.

The words "not negotiable" stamped on the face of a bill of lading do not simply limit the responsibility of the carrier, but give notice to purchasers of the possible rights of the consignor, and are sufficient to put a purchaser on inquiry as to the facts of the right of stoppage in transitu by the consignor.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 179–190; Dec. Dig. § 59.*]

10. CARRIERS (§ 59*)—ASSIGNEE OF BILL OF LADING—RIGHTS ACQUIRED.

Where one had in his possession the indorsed bill of lading stamped thereon with the words "not negotiable" and a written order from the consignee to deliver the goods to him, and delivery thereof was refused solely because of his refusal to pay the freight in cash, the failure to obtain possession of the goods and defeat the right of stoppage in transitu was due wholly to his breach of contract of carriage, and he could not invoke the aid of equity to cancel the note given by him for the goods.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 179–190; Dec. Dig. § 59.*]

Miller, J., dissenting.

On rehearing. Overruled.

For former opinion, see 121 App. Div. 182, 105 N. Y. Supp. 794. See, also, 116 N. Y. Supp. 1136.

Argued before HIRSCHBERG, P. J., and GAYNOR, BURR, RICH, and MILLER, JJ.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Richmond Weed (John W. Weed, on the brief), for appellant.
John F. Brush, for respondent.
Charles F. Williams (Eustace Conway, on the brief), for the Southern Pacific Company, intervening.

BURR, J. Upon a former hearing of the appeal in this case, the record failed to show, that the shipping receipt or bill of lading issued by the Morgan's Louisiana & Texas Railroad & Steamship Company to the Gibson Cypress Lumber Company, the shipper of the lumber in question, had stamped thereon the words "Not negotiable." After our decision that the judgment in favor of the plaintiff should be reversed and a new trial granted (Gass v. Astoria Veneer Mills, 121 App. Div. 182, 105 N. Y. Supp. 794), a motion was made to correct the record so that this fact should appear, and for a reargument of the appeal. The motion was granted, and the question now presents itself: Does this additional fact lead to a different conclusion?

A bill of lading in the first instance represents the contract between the shipper and the carrier, by which, for a specified sum, the latter undertakes to deliver the goods received by it to the rightful owner thereof, and to no other person. McEntee v. N. J. Steamboat Co., 45 N. Y. 34, 6 Am. Rep. 28. The consignee named in the bill of lading is presumptively the owner of the goods, and entitled, upon complying with the terms of the contract of carriage, to demand possession of the same (1 Hutchinson on Carriers [3d Ed.] 177; Bailey v. H. R. R. R. Co., 49 N. Y. 70), and a delivery to a consignee or by his direction is a good delivery (Sweet v. Barney, 23 N. Y. 335). A bill of lading also stands for many purposes as the representative of the goods shipped, and at common law the title to the goods while they were in the possession of the carrier as bailee might be transferred by means of an indorsement and delivery of the bill of lading to a third person, whose title to them, however, was no better than that of the person by whom the transfer was made. 6 Cyc. 424; Commercial Bank of Keokuk v. Pfeiffer, 108 N. Y. 250, 15 N. E. 311; Shaw v. Railroad Co., 101 U. S. 557, 25 L. Ed. 892. A bill of lading is sometimes spoken of as a negotiable or quasi negotiable instrument. 6 Cyc. 424; Shaw v. Railroad Co., supra. What is meant by that term as applied to a bill of lading? In the Shaw Case the court say:

"It is a technical term derived from the usage of merchants and bankers in transferring, primarily, bills of exchange, and, afterwards, promissory notes. At common law no contract was assignable, so as to give an assignee a right to enforce it by suit in his own name. To this rule bills of exchange and promissory notes, payable to order or bearer, have been admitted exceptions, made such by the adoption of the law merchant. They may be transferred by indorsement and delivery, and such a transfer is called negotiation. It is a mercantile business transaction, and the capability of being thus transferred, so as to give to the indorsee a right to sue on the contract in his own name, is what constitutes negotiability. The term 'negotiable' expresses, at least primarily, this mode and effect of a transfer. In regard to bills and notes certain other consequences generally, though not always, follow. * * * But none of these consequences are necessarily attendants or constituents of negotiability or negotiation. That may exist without them."

After stating some of the consequences of negotiability as the term is applied to bills of exchange and promissory notes, and in so far as

they relate to the conferring of a title in the transferee superior to that of the person from whom he receives the same, the court continues:

"The function of that instrument [a bill of lading] is entirely different from that of a bill or note. It is not a representative of money, used for transmission of money, or for the payment of debts or for purchases. It does not pass from hand to hand as bank'notes or coin. It is a contract for the performance of a certain duty. True, it is a symbol of ownership of the goods covered by it—a representative of those goods. But, if the goods themselves be lost or stolen, no sale of them by the finder or thief, though to a bona fide purchaser for value, will divest the ownership of the person who lost them, or from whom they were stolen. Why, then, should the sale of the symbol or mere representative of the goods have such an effect?"

It would seem, therefore, to be the law, in the absence of any statute affecting the question, that unless the true owner of property by his voluntary act or by his negligence or carelessness has put it in the power of another to occupy ostensibly the position of owner, so that he may be estopped from asserting his right against a purchaser thereof, who has been misled to his hurt by his action or conduct, the transferee of a negotiable bill of lading would acquire no higher or better title to the goods represented thereby than his transferror had. Negotiability of a bill of lading, therefore, means assignability so far as the written contract of carriage is concerned, and, so far as the goods described in the bill of lading are concerned, a conveyance of such title thereto as the transferror had. We have been unable to find any statute of this state, nor has our attention been called to any, relating to the negotiability of bills of lading and the effect of the transfer thereof, which were in force at the date of the transactions in question, except the factors' act (Laws 1830, p. 203, c. 179) and the Penal Code (sections 628 to 634a). The factors' act provides that:

"Every factor or other agent intrusted with the possession of any bill of lading * * * shall be deemed to be the true owner thereof so far as to give validity to any contract made by such agent with any other person for the sale or disposition of the whole or any part of such merchandize." Laws 1830, p. 203, c. 179, § 3.

This statute has been construed as having been designed for the protection of those who in good faith and in ignorance of any defect of title in their vendor purchased the property upon the faith of the merchandise and the ownership thereof by such vendor, as evidenced by the documentary evidence of title with which he has been intrusted by the owner. It is the act of the owner intrusting another with the documentary evidence of ownership. It is the apparent ownership and right of disposal in connection with the fact that innocent third persons deal with him upon the faith of such apparent ownership that estops the true owner from following his property into the hands of a bona fide purchaser, and gives the latter a better title than the vendor had. It is the open, visible appearance resulting from the conscious and voluntary act of the owner that gives effect to the transaction and estops him from claiming his goods. Howland v. Woodruff, 60 N. Y. 73; Soltau v. Gerdau, 119 N. Y. 380, 23 N. E. 864, 16 Am. St. Rep. 843; N. Y. Security & Trust Co. v. Lipman, 157 N. Y. 551, 52 N. E. 595. The Penal Code in the sections above referred to,

so far as its provisions are important to the matters here in controversy, provides in substance (transposing some of its phrases for a better understanding thereof) that:

"The master, owner or agent of any vessel, or officer or agent of any railway, express or transportation company, who delivers to another any merchandise for which a bill of lading, receipt or voucher has been issued * * * is punishable by imprisonment exceeding one year, or by a fine not exceeding one thousand dollars, or by both * * * unless such receipt is surrendered to be canceled at the time of such delivery, or unless in case of a partial delivery a memorandum thereof is indorsed upon such receipt or voucher, or unless such receipt or voucher bears upon its face the words 'not negotiable' plainly written or stamped."

We think it is apparent that the purpose and object of the two statutes taken together was, first, to give to a bill of lading issued in the ordinary form a higher quality of negotiability than simply to make it transferable by indorsement and delivery. The voluntary act of the owner of property in giving to another a bill of lading which unqualifiedly directs the common carrier to whom the goods therein described have been committed for transportation to deliver such goods to the person named in the bill of lading or to his order is deemed a sufficient act to estop him from making any claim upon the goods as against a person dealing in good faith with the person named therein. Second. As a further protection to such persons, the Penal Code provides for the punishment of the common carrier who should deliver the goods described in such a bill of lading to any other person than the consignee, while such bill of lading was outstanding and might come into the hands of an innocent purchaser thereof. The provisions of the Penal Code are a substitute for previous acts relating to the same subject-matter. Laws 1858, p. 532, c. 326; Laws 1859, p. 862, c. 353; Laws 1866, p. 983, c. 440; 2 Rev. St. (Banks's 6th Ed.) p. 229, pt. 1, c. 16, tit. 4. The Penal Code was adopted in 1881 to take effect May 1, 1882 (Laws 1881, p. 913, c. 676). In 1885 an act was passed requiring the Attorney General to prepare and report to the Legislature an act to repeal the statutes that had been superseded by the Penal Code (Laws 1885, p. 877, c. 524), and in 1886 the foregoing acts were expressly repealed. Laws 1886, pp. 840, 843, c. 593, § 1, subds. 33, 34, 41. See, also, Mairs v. Baltimore & Ohio R. R. Co., 175 N. Y. 409, 67 N. E. 901. Burnham v. C. V. S. Co., 142 N. Y. 169, 172, 36 N. E. 889.

This being the nature of a bill of lading and the state of the law both common and statute at the time of the transaction out of which this controversy arises, what was the effect of stamping the words "not negotiable" upon the face of the bill of lading? Under our statute any contract is assignable, and suit to enforce it must be brought in the name of the assignee. Code Civ. Proc. § 449. Although the reason for declaring a bill of lading negotiable at common law (namely, to make it transferable by indorsement and delivery) had ceased to exist, it could hardly be supposed that it was intended by using the words "not negotiable" to destroy this quality of the instrument, and to make this contract an exception to the general rule, and to prohibit the assignment or transfer of the bill of lading and of the contract represented thereby by such indorsement and delivery, particularly as even

in case of a bill drawn to order transfer by delivery alone has been held sufficient. First Nat. Bank of Syracuse v. N. Y. C. & H. R. R. R. Co., 85 Hun, 160, 32 N. Y. Supp. 604; Merchants' Bank v. U. R. R. & T. Co., 69 N. Y. 379; Colgate v. Pennsylvania Co., 102 N. Y. 120, 6 N. E. 114. It has been so held in Missouri, notwithstanding that there is a statute of that state which, although providing in an earlier section that bills of lading might be transferred by assignment and delivery, contained a further provision that "All bills of lading which have the words 'not negotiable' plainly written or stamped on the face thereof shall be exempt from the provisions of" said act. 1 Rev. St. Mo. 1889, § 745; Midland National Bank v. M., K. & T. Ry. Co., 62 Mo. App. 531. Unless, therefore, the words "not negotiable" affect the power of the consignee named in such bill of lading. to transfer a valid title to a purchaser of the goods from him, free from any claim on the part of the true owner thereof, it is difficult to see what effect can be given to the said words. If the bill of lading failed to show clearly who the consignee was, delivery without ascertaining from the shipper to whom such delivery was to be made would make the common carrier liable in conversion. Furman v. Union Pacific R. R. Co., 106 N. Y. 579, 13 N. E. 587; Bank v. Bissell, 72 N. Y. 615. Equally must it be true that if the bill of lading shows that certain rights to the property described therein are reserved to the shipper, and that such property shall only be delivered upon conditions which shall protect those rights, a delivery in disregard of those conditions would make the carrier liable. First Nat. Bank of Toledo v. Shaw, 61 N. Y. 283, 296. We think, therefore, that the transferee of a bill of lading stamped upon its face "not negotiable" cannot avail himself of the beneficial provision of the factors' act above referred to, but is left to such rights thereunder as he might have had at common law. There is no room in such a case for the application of the doctrine of estoppel, for the vendor has not represented that the holder of the bill of lading is the unqualified and absolute owner of the goods described therein. We think it is too narrow a construction to hold that the words "not negotiable" are intended simply to limit the responsibility of the carrier. The case of Dymock v. M., K. & T. Ry. Co., 54 Mo. App. 400, in so far as opposed to this contention, must be deemed to be decided in view of the peculiar language of the Missouri statute. But, if otherwise, then we feel constrained not to follow the same. We think that by the use of these words it was also intended to give notice to such purchasers of the possible rights of the consignor. If it be contended that the effect of this construction will be to hamper commercial transactions and to make the sale of merchandise through the transfer of a bill of lading more difficult, it is sufficient to say that the shipper may refuse to receive a not-negotiable bill of lading, or by appropriate words may limit their effect so as to have them apply solely to the responsibility of the carrier. While, therefore, the right of stoppage in transitu may be defeated by the indorsement and delivery of an unconditional and unqualified bill of lading to a bona fide indorsee for a valuable consideration, without notice of facts on which such right depends (2 Hutchinson on Carriers [3d Ed.] § 762; Becker v. Hallgarten, 86 N. Y. 167; Lickbarrow v. Ma-

son, 2 Term Reports [Durnford & East] 63; Loeb v. Peters, 63 Ala. 243, 35 Am. Rep. 17; First Nat. Bank v. Schmidt, 6 Colo. App. 216, 40 Pac. 479), if the indorsee has such notice, either directly or by facts sufficient to put him upon inquiry, which inquiry would have disclosed the existence of such right, that right may be exercised even against him. We think that the words "not negotiable" stamped upon the face of the bill of lading were sufficient to put him upon his inquiry in this regard.

But, while this may be true as a general proposition, in the case at bar for other reasons the plaintiff cannot maintain this action. Whether the consideration for the plaintiff's note which he now seeks to have delivered up and canceled was the sale and delivery of the lumber described in the bill of lading, or the surrender and cancellation of the note and chattel mortgage which he had previously given, the fact remains that on the 31st day of March, 1905, the lumber was discharged upon the steamship company's dock, ready for delivery, and he was then in possession of such evidences of title to the lumber in question and of such rights to the immediate possession thereof that, if he had performed the obligations imposed upon him by his contract of purchase, he could have obtained the lumber and defeated the right of stoppage in transitu if any such existed. There is some doubt whether there was competent evidence introduced that such right did exist, or that it was ever exercised; but, in any event, it is sufficient to say that there is no claim that there was any attempt to exercise such right until some time on the 4th day of April. Between the 31st day of March and the 4th day of April the plaintiff had in his possession not only the indorsed bill of lading, but a written order from the consignee to deliver the lumber to him as its agent. His duty was to pay the freight in cash. There is no pretense that, if he had done this, the lumber would not have been delivered. In fact, twice during that interval his demand for the delivery of the lumber was refused solely upon the ground of his refusal to pay the freight in cash. He cannot be heard to plead his own default as an excuse for failing to perform his contract of purchase. If between the dates mentioned the lumber had been stolen or destroyed by fire, we think it could not have been successfully claimed that the loss should not fall upon him. Russell v. Carrington, 42 N. Y. 118, 1 Am. Rep. 498; Terry v. Wheeler, 25 N. Y. 520; Burrows v. Whitaker, 71 N. Y. 291, 27 Am. Rep. 42. It was through no fault of the defendant, who was the assignee of the consignee's rights to the contract between it and the plaintiff, that that contract was not carried out. On the contrary, the failure to obtain possession of the lumber was due wholly to plaintiff's breach of that contract. Under such circumstances, he cannot invoke the aid of a court of equity to grant him relief.

The judgment appealed from should be reversed and a new trial granted, costs to abide the event. All concur, except MILLER, J., who dissents.