a material witness and some additional documentary proof. It was not necessary to make such a statement to entitle the defendant to the adjournment, unless the plaintiff required an affidavit disclosing that fact.

The plaintiff's case on appeal, therefore, could not have been injuriously affected by the act of the learned county judge taking the affidavit into consideration, and the judgment must be affirmed, with costs.

JENKS, P. J., and THOMAS, J., concur.  BURR and WOODWARD, JJ., dissent.

(152 App. Div. 412.)

### GASS v. SOUTHERN PAC. CO.

(Supreme Court, Appellate Division, Second Department.  September 10, 1912.)

1. SALES (§ 296*)—REMEDIES OF SELLER—STOPPAGE IN TRANSITU—INSOLVENCY OF BUYER.

The right of stoppage in transitu may be exercised by the unpaid consignor against an insolvent consignee at any time before actual or constructive delivery of the goods, or the assignment of the bill of lading to a bona fide purchaser for value.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 837–847; Dec. Dig. § 296.*]

2. SALES (§ 296*)—CUSTODY OF GOODS—STOPPAGE IN TRANSITU.

A consignor may exercise the right of stoppage in transitu while the goods are in the possession of the carrier at destination and are held for unpaid freight charges, unless the bill of lading has been assigned to a bona fide purchaser for value.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 837–847; Dec. Dig. § 296.*]

3. CARRIERS (§ 58*)—BILL OF LADING—TRANSFER—STOPPAGE IN TRANSITU.

Although the transfer of an unconditional bill of lading by indorsement and delivery for value may defeat the consignor's right of stoppage in transitu, the words "not negotiable" on the face of the bill are sufficient to put the transferee upon his inquiry as to the rights of the consignor, and where he makes no inquiry, and by neglect to pay freight charges unreasonably delays obtaining possession of the goods until the consignee has become insolvent and the consignor has exercised its right of stoppage in transitu, he has no action against the carrier for conversion, upon its refusal to deliver possession.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 179–190; Dec. Dig. § 58.*]

Appeal from Special Term, Kings County.

Action by John H. Gass against the Southern Pacific Company. From a judgment of the Supreme Court, entered in the office of the clerk of the county of Kings, in favor of the plaintiff, for the sum of $752.62, with costs and interest, granted after a trial at the Kings County Special Term, defendant appeals.  Reversed, and new trial granted.

Argued before JENKS, P. J., and HIRSCHBERG, THOMAS, CARR, and WOODWARD, JJ.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Charles F. Williams, of New York City (Eustace Conway, of New York City, on the brief), for appellant.

John F. Brush, of Brooklyn, for respondent.

HIRSCHBERG, J. The defendant, a common carrier, appeals from a judgment awarding the plaintiff damages for the alleged conversion of certain lumber. The material facts were not disputed. It appeared that about February 1, 1905, the International Mahogany Company agreed to sell and to deliver to the plaintiff, free on board defendant's dock in the city of New York, certain lumber for the sum of $27 per 1,000 feet, including freight charges to that city, which were to be paid by plaintiff in cash. March 2, 1905, the International Mahogany Company, in order to comply with its contract, made a contract with the Gibson Cypress Lumber Company, a foreign corporation, whereby the latter company agreed to ship the lumber to the former company, free on board defendant's dock in the city of New York, for $385.83; the former company agreeing to pay the freight charges in cash at the time of delivery. On March 4, 1905, the Gibson Cypress Lumber Company delivered the lumber to the defendant at Gibson, in the state of Louisiana, for transportation to defendant's dock in New York City, and received a bill of lading therefor, marked "Not Negotiable," and containing the name of the International Mahogany Company as consignee. On March 20, 1905, the International Mahogany Company assigned its bill against the plaintiff for the purchase price of said lumber to the Astoria Veneer Mills. About the same day the plaintiff was notified of the assignment and asked to pay the purchase price of the lumber to said Astoria Veneer Mills. The bill of lading, properly indorsed, was delivered to the plaintiff on April 1, 1905. On March 30, 1905, the lumber arrived at the defendant's dock in New York City and was completely discharged thereon at 3 o'clock of the afternoon of the following day. On the 30th of March, 1905, the defendant sent a written notice to the consignee, the International Mahogany Company, informing it of the arrival of the lumber, and stating that the freight charges were $214.50. The International Mahogany Company indorsed this notice with a direction to deliver the lumber to the plaintiff, and delivered the notice so indorsed to the Astoria Veneer Mills. The latter company on April 3, 1905, loaned the plaintiff, at his request, the amount of the freight charges, and gave him the indorsed notice of the arrival of the lumber, with a receipted bill for the purchase price thereof, and the plaintiff gave that company his secured promissory notes therefor. On April 4, 1905, the plaintiff demanded the delivery of the lumber from defendant and tendered it the bill of lading, the notice of arrival, and the Astoria Veneer Mills' check for the freight charges. The defendant refused to deliver the lumber unless the freight charges were paid in cash. The parties stipulated on the trial that the defendant had the right to demand the payment of those charges in cash. On the same day, and before the payment of the freight charges in cash, and while the lumber was in defendant's possession, the consignor, Gibson Cypress Lumber Company,

notified the defendant not to deliver the lumber. On that day the consignee, the International Mahogany Company, was duly adjudged a bankrupt. On April 5, 1905, the plaintiff again demanded delivery of the lumber, and again presented the Astoria Veneer Mills' check in payment of the freight charges, and the defendant again refused to deliver the lumber. On the following day the plaintiff tendered cash to the defendant in payment of the freight charges, and the defendant then refused to deliver the lumber, on the ground that its delivery had been prevented by the order of the consignor.

[1, 2] The unpaid consignor's right of stoppage in transitu may be exercised against an insolvent consignee at any time prior to actual or constructive delivery of the goods or the assignment of the bill of lading to a bona fide purchaser for value. The consignor may exercise this right while the goods are in the possession of the carrier at the place of destination and are held for unpaid freight charges, unless the bill of lading has been so assigned. Hutchinson on Carriers (3d Ed.) § 760, note 10, §§ 766, 767; Harris v. Hart, 6 Duer, 606; Cyc. vol. 35, pp. 493–503.

[3] In the case at bar there was no delivery of the goods prior to the defendant's receipt of the stoppage order from the consignor, and the indorsement and transfer of the bill of lading was ineffectual under the circumstances of the case to defeat the consignor's right of stoppage in transitu. In Gass v. Astoria Veneer Mills, 121 App. Div. 182, 105 N. Y. Supp. 794, and 134 App. Div. 184, 118 N. Y. Supp. 982, the legal effect of that identical bill of lading was determined by this court in an action instituted by the present plaintiff against the Astoria Veneer Mills to restrain the collection or enforcement of the notes given by him under the circumstances hereinbefore stated. This court held that, although the transfer of an unconditional bill of lading by indorsement and delivery for value may defeat the right of stoppage in transitu, the words "Not Negotiable" on the face of the bill in the case at bar were sufficient to put the indorsee upon his inquiry with regard to the rights of the consignor. The plaintiff, instead of endeavoring to ascertain the condition of affairs, appears to have taken the bill of lading without question. He made no subsequent investigation, and by neglecting promptly to pay the freight charges unreasonably delayed obtaining possession of the lumber until the consignee had failed and the consignor had exercised its right of stoppage in transitu. Under these circumstances, and in view of our recent decision in Gass v. Astoria Veneer Mills, supra, I think the defendant was warranted in obeying the stoppage order transmitted to it by the consignor. Its letters to the consignee do not contain any waiver of its right to hold the lumber, those communications expressly making the proper payment of the freight charges a condition precedent to delivery.

The judgment should be reversed. All concur.